25-1963(L)
*County of Rockland v. Triborough Bridge & Tunnel Auth.*

# United States Court of Appeals
# for the Second Circuit

August Term 2025
Argued: March 12, 2026
Decided: July 13, 2026

Nos. 25-1963(L), 25-1964(Con)

COUNTY OF ROCKLAND; EDWIN J. DAY, IN HIS OFFICIAL CAPACITY AS
COUNTY EXECUTIVE; LEGISLATURE OF THE COUNTY OF ROCKLAND;
STEVEN M. NEUHAUS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS
COUNTY EXECUTIVE; COUNTY OF ORANGE,

*Plaintiffs-Appellants*,

v.

TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY; METROPOLITAN
TRANSPORTATION AUTHORITY,

*Defendants-Appellees*.[*]

Appeals from the United States District Court
for the Southern District of New York
Nos. 24-cv-02285, 24-cv-03983
Cathy Seibel, *Judge*.

---

[*] The Clerk of the Court is respectfully directed to amend the caption
as set forth above.

Before:   CALABRESI, PARK, and MERRIAM, *Circuit Judges*.

New York City's congestion-pricing program charges a toll for vehicles entering the Central Business District in Midtown and Lower Manhattan.   Two neighboring New York counties—Rockland and Orange—sued the Triborough Bridge and Tunnel Authority and the Metropolitan Transportation Authority, alleging that the program imposes an unauthorized tax, unconstitutionally restricts the right to travel, and violates the Due Process, Equal Protection, and Excessive Fines Clauses of the New York and U.S. Constitutions.   The district court (Seibel, *J.*) granted Defendants' motion to dismiss for failure to state a claim.

Assuming without deciding that the toll is not a tax under New York law, we conclude that the district court correctly dismissed the remaining causes of action.   First, Orange County fails to allege that congestion pricing violates the right to travel.   The program does not create invidious distinctions among drivers or impose more than a minor restriction on the right to travel, so we review only for reasonableness.   *See Nw. Airlines, Inc. v. County of Kent*, 510 U.S. 355, 369 (1994).   And Orange County fails to allege that the toll is an unreasonable user fee.   Second, Plaintiffs fail to state Due Process or Equal Protection claims because the congestion-pricing program is rationally related to New York's legitimate interests in raising funds for mass transit and reducing vehicular congestion.   Third, Rockland County does not plausibly allege that the toll is an unconstitutionally excessive fine.   Finally, the district court did not abuse its discretion in denying leave to amend.   We thus **AFFIRM** the judgments of the district court.

MATTHEW G. PARISI, McGowan Harrington Parisi PLLC, New City, NY, *for Plaintiffs-Appellants County of Rockland; Edwin J. Day, in his official capacity as County Executive; and Legislature of the County of Rockland.*

WILLIAM S. BADURA (Richard B. Golden, *on the brief*), Orange County Department of Law, Goshen, NY, *for Plaintiffs-Appellants Steven M. Neuhaus, individually and in his official capacity as County Executive; and County of Orange.*

D. BRANDON TRICE, Kaplan Martin LLP, New York, NY (Roberta A. Kaplan, Maximilian T. Crema, Thomas A. Lloyd, Kaplan Martin LLP, New York, NY; Mark A. Chertok, Elizabeth Knauer, Sive, Paget & Riesel P.C., New York, NY, *on the brief*), *for Defendants-Appellees.*

PARK, *Circuit Judge*:

New York City's congestion-pricing program charges a toll for vehicles entering the Central Business District in Midtown and Lower Manhattan. Two neighboring New York counties—Rockland and Orange—sued the Triborough Bridge and Tunnel Authority and the Metropolitan Transportation Authority, alleging that the program imposes an unauthorized tax, unconstitutionally restricts the right to travel, and violates the Due Process, Equal Protection, and Excessive Fines Clauses of the New York and U.S. Constitutions. The district court granted Defendants' motion to dismiss for failure to state a claim.

3

Assuming without deciding that the toll is not a tax under New York law, we conclude that the district court correctly dismissed the remaining causes of action. First, Orange County fails to allege that congestion pricing violates the right to travel. The program does not create invidious distinctions among drivers or impose more than a minor restriction on the right to travel, so we review only for reasonableness. *See Nw. Airlines, Inc. v. County of Kent*, 510 U.S. 355, 369 (1994). And Orange County fails to allege that the toll is an unreasonable user fee. Second, Plaintiffs fail to state Due Process or Equal Protection claims because the congestion-pricing program is rationally related to New York's legitimate interests in raising funds for mass transit and reducing vehicular congestion. Third, Rockland County does not plausibly allege that the toll is an unconstitutionally excessive fine. Finally, the district court did not abuse its discretion in denying leave to amend. We thus affirm the judgments of the district court.

## I. BACKGROUND

A. <u>Factual Background</u>[1]

In 2019, New York State enacted the Traffic Mobility Act, which requires the Triborough Bridge and Tunnel Authority ("TBTA"), an affiliate of the Metropolitan Transportation Authority ("MTA"), to establish the Central Business District ("CBD") Tolling Program, also known as congestion pricing. N.Y. Veh. & Traf. Law § 1701 *et seq.*

---

[1] "On review of a District Court's decision granting a motion to dismiss, we take as true the facts set forth in the complaint." *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 245 n.1 (2d Cir. 2018).

4

The Tolling Program charges a daily toll on each vehicle entering New York's CBD.[2] The toll does not vary based on mileage driven or time spent in the CBD, and it does not apply to vehicles whose trips originate and remain within the CBD.

One stated purpose of the Program is "reducing traffic congestion within the [CBD]." *Id.* § 1704-A(1). Another is "funding capital projects" for mass transit. *Id.* The MTA announced that toll proceeds will be used to modernize New York City subways and buses (80%) and to support the Long Island Rail Road (10%) and the Metro-North Railroad (10%).

Rockland and Orange Counties are municipalities in New York. Edwin J. Day is the Rockland County Executive, and Steven M. Neuhaus serves as the Orange County Executive. The complaints describe the Counties as "transit deserts" because they have limited mass-transit options into Manhattan, including the CBD. It can take two hours or more, including wait times, to get from Rockland County to Manhattan using mass transit—more than double the typical driving time without traffic. And Orange County is served by one train line that requires a transfer in New Jersey. Many Rockland and Orange County residents thus rely on driving to commute to Manhattan.

---

[2] The CBD includes "the geographic area in the borough of Manhattan south of and inclusive of sixtieth street to the extent practicable but shall not include the FDR Drive, and New York state route 9A otherwise known as the 'West Side highway' including the Battery Park underpass and any surface roadway portion of the Hugh L. Carey Tunnel connecting to West St." N.Y. Veh. & Traf. Law § 1704(2).

B.    Procedural History

In 2024, before the Tolling Program took effect, Rockland and Orange Counties separately sued the MTA and the TBTA challenging the Program on constitutional grounds.[3]    Rockland filed an amended complaint several months later.    The district court designated the two cases as related.

Plaintiffs assert that the Tolling Program imposes an unauthorized tax in violation of the New York Constitution and violates the Equal Protection Clauses of the New York and U.S. Constitutions.    Orange also claims that the Program unconstitutionally restricts the right to travel and violates the Due Process Clauses of the New York and U.S. Constitutions, and Rockland asserts that the Program violates the Excessive Fines Clauses of the New York and U.S. Constitutions.    Each Plaintiff seeks a judgment declaring that the Program imposes an unauthorized tax and an injunction prohibiting Defendants from implementing the Program.    In addition, Orange requests a judgment declaring that the toll violates the right to travel as well as the Due Process and Equal Protection Clauses, and Rockland seeks an injunction requiring Defendants to study a possible offset for bridge tolls paid by Rockland County residents driving into Manhattan.

---

[3] Plaintiffs in Rockland County's case are Rockland County, Edwin J. Day in his official capacity as County Executive, and the Rockland County Legislature (collectively, "Rockland").    Plaintiffs in Orange County's case are Orange County and Steven M. Neuhaus, both individually and in his official capacity as County Executive (collectively, "Orange").    Rockland's case before the district court is No. 24-cv-02285, and Orange's case is No. 24-cv-03983.    We designated Rockland's appeal in this Court as No. 25-1963(L) and Orange's appeal as No. 25-1964(Con).

In January 2025, Defendants moved to dismiss both complaints for failure to state a claim. In July 2025, the district court granted the motion and *sua sponte* denied leave to amend. Plaintiffs timely appealed, and we consolidated the appeals.

## II. DISCUSSION

A.   Tax Injunction Act

We first address a jurisdictional issue. The Tax Injunction Act ("TIA") "prohibits lower federal courts from restraining 'the assessment, levy or collection of any tax under State law,'" or issuing "declaratory relief that would thwart state tax collection," "'where a plain, speedy and efficient remedy may be had in the courts of such State.'" *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 417, 424 n.4 (2010) (quoting 28 U.S.C. § 1341).

Plaintiffs claim that the Program imposes an unauthorized state tax, and they seek judgments declaring the toll to be an unauthorized tax and an injunction prohibiting its collection. If Plaintiffs were correct, granting the declaratory and injunctive relief they seek in federal court would "thwart state tax collection" in contravention of the TIA. *Id.* at 424 n.4. Rockland acknowledges that "any relief from this [alleged] state tax must be sought in State court," Rockland Br. at 17 n.4, and neither Rockland nor Orange claims that New York courts are unable to provide "a plain, speedy and efficient remedy," 28 U.S.C. § 1341. The TIA would thus deprive the federal courts of jurisdiction over Plaintiffs' claims if we were to agree with them that the Program imposes a state tax. *See Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 737 F.3d 228, 235 (2d Cir. 2013).

7

Nonetheless, "we may exercise hypothetical jurisdiction" here because "the jurisdictional issue goes to statutory and not constitutional jurisdiction." *Abimbola v. Ashcroft*, 378 F.3d 173, 180 (2d Cir. 2004). So we assume without deciding that the toll is not a state tax under the TIA and "proceed to dismiss the case on the merits." *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 416 (2d Cir. 2022).

B.    Standard of Review

"We review *de novo* the district court's grant of [a] motion to dismiss." *Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025). "A complaint is properly dismissed where it does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotation marks omitted). Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The "court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Xeriant*, 141 F.4th at 411 (quotation marks omitted).

C.    Right-to-Travel Claim

Orange first argues that the Tolling Program violates the right to travel. We disagree.

1.    *Legal Framework*

The Supreme Court has long recognized "the constitutional right to travel from one State to another," *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (quotation marks omitted), but the "textual source" of the

8

right "has proved elusive," *Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 902 (1986). The right "has been variously assigned to the Privileges and Immunities Clause of Art[icle] IV," "the Privileges and Immunities Clause of the Fourteenth Amendment," "the Commerce Clause," *id.*, and "the Due Process Clauses of the Fifth and Fourteenth Amendments," *Jones v. Helms*, 452 U.S. 412, 418-19 (1981). The Court has also invoked the Equal Protection Clause to protect the right, *see Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 253, 269 (1974), and the right has "been inferred from the federal structure of government adopted by our Constitution," *Soto-Lopez*, 476 U.S. at 902. "Whatever its origin, the right to migrate is firmly established." *Id.* at 903.

Although "the Supreme Court has not decided whether the constitutional right to travel safeguards free movement within a given State as well as between States," *Jeffery v. City of New York*, 113 F.4th 176, 190 (2d Cir. 2024), "we have recognized the Constitution's protection of a right to intrastate as well as interstate travel," *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 100 (2d Cir. 2009) (*Selevan I*).[4] We have explained that it "would be meaningless to describe the right to travel between states as a fundamental precept of personal liberty and not to acknowledge a correlative constitutional right to travel within a state." *King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 648 (2d Cir. 1971).

---

[4] "Courts of Appeals are divided as to whether the Constitution affords a right to intrastate travel." *Jeffery*, 113 F.4th at 191 & n.19 (citing cases).

"[O]ur precedent appears to recognize that the right to travel, like most constitutional rights, is not unlimited." *Jeffery*, 113 F.4th at 192. "While the parameters of that right have not been sharply defined by our Court, it is clear that the right protects *movement between places* and has no bearing on *access* to a particular place." *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008). We have further recognized that "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on travel simply do not amount to the denial of a fundamental right." *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (cleaned up). We have therefore "reject[ed] challenges to policies imposing" such "minor restrictions." *Jeffery*, 113 F.4th at 191 (cleaned up).

Our framework for assessing whether a fee or toll unconstitutionally infringes the right to travel traces back to the Supreme Court's decision in *Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc.*, 405 U.S. 707 (1972). There, the Court considered "whether a charge by a State or municipality of $1 per commercial airline passenger to help defray the costs of airport construction and maintenance violates the" right to travel or the Commerce Clause. *Id.* at 709. In concluding that it does not, the Court "regard[ed] it as settled that a charge designed only to make the user of state-provided facilities pay a reasonable fee to help defray the costs of their construction and maintenance" does not "burden" "the right to travel" and "may constitutionally be imposed on interstate and domestic users alike." *Id.* at 714. "[I]n this context," the Court stated, the "principle that burdens on the right to travel are constitutional only if shown to be necessary to promote a compelling state interest has no application." *Id.* The Court then reviewed its

10

"decisions concerning highway tolls," which it found "instructive," and explained that "so long as the toll is based on some fair approximation of use or privilege for use . . . and is neither discriminatory against interstate commerce nor excessive in comparison with the governmental benefit conferred, it will pass constitutional muster, even though some other formula might reflect more exactly the relative use of the state facilities by individual users." *Id.* at 715-17. Applying these standards, the Court concluded that the fees were "valid charges on the use of airport facilities constructed and maintained with public funds." *Id.* at 720.

In *Northwest Airlines*, the Court applied the "*Evansville* standards" to determine whether airport user fees were "reasonable" under the Anti-Head Tax Act. 510 U.S. at 366-67. Under *Evansville*, the Court explained, "a levy is reasonable . . . if it (1) is based on some fair approximation of use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce." *Id.* at 369. The Court "found the challenged fees reasonable . . . through the lens of *Evansville*." *Id.* at 374.

We have applied *Evansville* and *Northwest Airlines* to assess whether a toll violates the right to travel. In cases addressing right-to-travel challenges to toll policies providing discounts to certain commuters, we have explained that *Evansville* "recognized a difference between the sort of invidious distinctions that penalize the right to travel and cases in which a state has simply levied a charge designed only to make the user of state-provided facilities pay a reasonable fee to help defray the costs of their construction and maintenance." *Selevan I*, 584 F.3d at 102 (cleaned up). If a toll

11

policy "involve[s] invidious distinctions," we apply strict scrutiny, requiring the government "to show that the regulation is narrowly tailored to serve a compelling governmental interest." *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 257-58 (2d Cir. 2013) (*Selevan II*) (quotation marks omitted). In contrast, a toll policy that "lack[s] the markers of invidious distinctions" and amounts "only to a minor restriction on travel" should "be analyzed under the three-part test set forth in *Northwest Airlines*." *Janes v. Triborough Bridge & Tunnel Auth.*, 774 F.3d 1052, 1054 (2d Cir. 2014) (quotation marks omitted); *see Selevan I*, 584 F.3d at 102; *Selevan II*, 711 F.3d at 258.

We thus consider first whether the Tolling Program is subject to strict scrutiny and then, if it is not, whether it passes the *Northwest Airlines* test.

2. *Strict Scrutiny Does Not Apply*

Orange's right-to-travel claim does not trigger strict scrutiny. Orange contends that driving "is often the only viable" way for Orange County residents to commute to Manhattan. Orange Br. at 7; *see* Orange App'x at 17. But Orange cites no authority, and we have found none, holding that a toll imposes more than a minor restriction on travel because of the alleged importance of the route. And the Tolling Program creates no classifications among drivers that are "invidious," *Janes*, 744 F.3d at 1054 (quotation marks omitted), or "wholly arbitrary," *City of New Orleans v. Dukes*, 427 U.S. 297, 303-04 (1976). Orange asserts that the Program irrationally distinguishes between (1) "vehicle owners who drive vehicles in[to] the CBD" and must pay the toll and (2) "those who garage and restrict their vehicle's use within the CBD" and are exempt from the toll, even though they may also contribute to "traffic congestion." Orange App'x at 19.

12

This is not an arbitrary classification. New York could rationally conclude that vehicles entering the CBD contribute to congestion, that charging a toll on such vehicles would reduce congestion, and that imposing a point-of-entry toll is more workable than tolling vehicles that remain in the CBD. *See infra* Section II.D.[5] So strict scrutiny does not apply.

### 3. Northwest Airlines *Test*

Because Orange's right-to-travel claim does not merit strict-scrutiny analysis, we apply the *Northwest Airlines* test, which "simply requires 'reasonableness.'" *Selevan I*, 584 F.3d at 98. That test "asks whether the fee (1) is based on some fair approximation of use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce." *Selevan II*, 711 F.3d at 259 (quotation marks omitted).

In *Selevan II*, we applied *Northwest Airlines* to uphold the constitutionality of a policy giving "a toll discount to residents of Grand Island, New York, who must use bridges . . . in order to travel

---

[5] Orange also argues that the Tolling Program "deters travel" and "has as a primary objective the impeding of travel." Orange Br. at 6; *see Selevan I*, 584 F.3d at 100 (explaining that a state law that "actually deters" travel or whose "primary objective" is "impeding travel" "implicates the right to travel" (quotation marks omitted)). But Orange does not allege that the Program "actually deters" travel, as opposed to a specific mode of travel. *Selevan I*, 584 F.3d at 100 (quotation marks omitted). And while Orange does allege that the Program's "primary objective" is "[i]mpeding *certain* travel into the CBD" by "compel[ling] persons who would otherwise drive into Midtown and Lower Manhattan to take mass transit into that area," Orange does not allege that the Program seeks to impede travel into the CBD altogether. Orange App'x at 17-18 (emphasis added).

by car between their homes and any location not on Grand Island, while denying the discount to all other motorists." *Id.* at 254. We rejected a challenge to the toll policy by nonresidents because (1) the policy was "a fair, if imperfect approximation of" use that reflected "rational distinctions" between residents, who "may need to use the bridge[s] and pay the toll several times a day, and other motorists"; (2) the higher toll rates for nonresidents were "not excessive in relation to the benefits which they confer; namely access to a well maintained, trooper-patrolled highway which either enables or expedites passengers' travels"; and (3) the plaintiffs did not allege that the policy favored an "in-state economic interest to the detriment of an out-of-state competitor." *Id.* at 259-61 (quotation marks omitted).

The Tolling Program is consistent with the *Northwest Airlines* test. First, Orange concedes that "the Program does not discriminate against interstate commerce."[6] Orange Br. at 11.

Second, the toll "is based on some fair approximation of use of the facilities." *Nw. Airlines*, 510 U.S. at 369. This prong addresses "whether the fee supplies a benefit to users of a facility that is at least roughly commensurate with the burden it imposes on them." *Selevan I*, 584 F.3d at 97. Orange contends that the toll "provides no benefit to the class of people it is imposed against" because "[n]o proceeds from the Program toll are earmarked for improvements of the streets within the CBD" and there is "no specific designation of the funds for improvement of the one sporadic rail line that serves

---

[6] Both Orange and Rockland argue that the Program treats drivers who remain within the CBD differently from those who enter the CBD. That is not a distinction between in-state and out-of-state drivers.

Orange County." Orange Br. at 9. But *Northwest Airlines* does not require that toll proceeds be used in a specific way to the direct benefit of those paying the toll. *Cf. Selevan I*, 584 F.3d at 98 ("The *Northwest Airlines* test is not inflexible; it simply requires 'reasonableness.'"). And the Program aims to benefit all toll payers by reducing traffic congestion in the CBD generally. As Orange alleges, the Program seeks to improve roadway congestion by deterring commuters from driving into the CBD and by raising funds for public-transit systems. Orange even acknowledges that the CBD may be less congested because of the toll. This is a sufficient connection between the fee and the benefit conferred.

Third, the toll "is not excessive in relation to the benefits conferred." *Nw. Airlines*, 510 U.S. at 369. Orange claims that Orange County residents will receive little benefit from the Program, thereby making it excessive, but this argument fails for the reasons explained above. *Cf. Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 567 F.3d 79, 86 (2d Cir. 2009) ("In this case, the 'fair approximation' and the 'excessiveness' criteria substantially overlap.").

The Tolling Program thus satisfies the *Northwest Airlines* test, so Orange's complaint fails to state a right-to-travel claim.

D. Due-Process and Equal-Protection Claims

Plaintiffs also assert that the Tolling Program violates the Due Process and Equal Protection Clauses of the New York and U.S. Constitutions. The district court properly dismissed these claims.

The "Equal Protection Clauses of the federal and New York Constitutions are coextensive," *Town of Southold*, 477 F.3d at 52 n.3,

15

and New York courts generally "have interpreted the due-process guarantees of the New York Constitution and the United States Constitution to be coextensive—or assumed that they are," *Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 427 n.13 (2d Cir. 2011). "For either type of claim, when a challenged statute does not implicate suspect or quasi-suspect classifications or burden fundamental rights, we apply rational basis review, which demands only that the classification be rationally related to a legitimate governmental interest." *United States v. Amalfi*, 47 F.4th 114, 124 (2d Cir. 2022). Rational-basis review "is highly deferential" and "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018) (quotation marks omitted). We "need not consider whether [the legislature] might have employed more precise language or other classifications better to achieve its goal." *Spina v. Dep't of Homeland Sec.*, 470 F.3d 116, 131 (2d Cir. 2006). "Rather, a statute is presumed constitutional," and "the one attacking the legislative arrangement" bears the "heavy burden" to "negative every conceivable basis which might support it." *Winston*, 887 F.3d at 560 (cleaned up).

The Tolling Program satisfies rational-basis review. [7] Plaintiffs acknowledge that the Program's "intent" is to "provide capital funding for mass transit[,] particularly the subways, to reduce vehicular congestion on the roadways, and to protect the public

---

[7] Plaintiffs do not claim the Tolling Program implicates a suspect or quasi-suspect classification, nor does it burden a fundamental right. Rockland argues that its complaint "implicate[s] the constitutional right to travel, a subspecies of Equal Protection." Rockland Br. at 8. But its right-to-travel allegations mirror Orange's, which fail for the reasons given above. *See supra* Section II.C.

16

health." Rockland App'x at 18; Orange App'x at 13. And the parties do not dispute that these are legitimate government interests. So all that remains is the small analytical step of deciding whether the Program is rationally related to these interests. It is. As Plaintiffs allege, the Program seeks to reduce congestion and pollution by inducing "persons who would otherwise drive into the CBD to take mass transit into that area." Rockland App'x at 20; *see* Orange App'x at 17. And toll proceeds will be used to finance mass-transit projects. *See* Rockland App'x at 20; Orange App'x at 16.

Plaintiffs' allegation that the Program is discriminatory because it excludes vehicles whose trips originate and remain within the CBD—but still contribute to congestion and pollution—does not change this result. As noted, we "need not consider whether [the legislature] might have employed . . . other classifications better to achieve its goal." *Spina*, 470 F.3d at 131. Imposing a fixed toll at the point of entry into the CBD is a sensible way to advance the Program's goals. New York could reasonably conclude that this approach is more practicable than one that tracks how long a vehicle remains or how far it travels in the CBD. The Tolling Program thus "promotes administrative efficiency," *Ellis v. Apfel*, 147 F.3d 139, 146 (2d Cir. 1998), which is sufficient to uphold it against a rational-basis challenge, *see Est. of Landers v. Leavitt*, 545 F.3d 98, 112 (2d Cir. 2008).

E.     Remaining Issues

We address Plaintiffs' remaining claims only briefly. Rockland argues that the Tolling Program violates the Excessive Fines Clauses of the New York and U.S. Constitutions. This claim is meritless. "A fine refers to a payment to a sovereign as punishment for some offense." *von Hofe v. United States*, 492 F.3d 175, 181 (2d Cir.

17

2007) (quotation marks omitted); *see also County of Nassau v. Canavan*, 1 N.Y.3d 134, 139 (2003). Rockland does not and cannot allege that driving into the CBD is a punishable offense. The toll thus is not a fine and the Excessive Fines Clauses do not apply at all. *See United States v. Viloski*, 814 F.3d 104, 109 (2d Cir. 2016).

Next, Rockland seeks an injunction requiring Defendants to study a potential offset for bridge tolls paid by Rockland County residents driving into Manhattan. Defendants urged the district court to dismiss this claim because (1) an injunction is a remedy rather than a cause of action and (2) Rockland's causes of action all fail. Rockland did not respond to this argument below, so it has abandoned this claim. *See Jackson v. Fed. Express*, 766 F.3d 189, 197-98 (2d Cir. 2014).

Finally, the district court did not err by denying leave to amend. "We review a district court's denial of leave to amend for abuse of discretion." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (quotation marks omitted). An "amendment is not warranted absent some indication as to what appellants might add to their complaint in order to make it viable." *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004) (cleaned up). "We have described the contention that the District Court abused its discretion in not permitting an amendment that was never requested as frivolous." *Williams*, 659 F.3d at 212 (quotation marks omitted).

Plaintiffs did not request leave to amend when opposing the motion to dismiss, nor did they "disclose what additional allegations they would make which might lead to a different result." *Horoshko*, 373 F.3d at 249. Indeed, the district court adopted Plaintiffs' own proposed schedule for submitting amended pleadings, but they chose

18

not to file any.   We thus "see no abuse of discretion in the district court's failure to grant leave to replead *sua sponte*."   *Williams*, 659 F.3d at 212.

### III.   CONCLUSION

We have considered Plaintiffs' remaining arguments and find them to be without merit.   For the foregoing reasons, we affirm the district court's grant of Defendants' motion to dismiss and its denial of leave to amend.